**PORTO RICO LIGHTERAGE CO.**

v.

**MARTE CIA. NAV. S. A. et al.**

**THE JOHN E. BERWIND.**

**THE JAN.**

**THE GEORGIANA.**

United States District Court
S. D. New York.
Dec. 11, 1953.

Haight, Deming, Gardner, Poor & Havens, New York City, proctors for libelant, by Charles S. Haight, Gordon W. Paulsen, New York City, of counsel.

Dougherty, Ryan & Mahoney, New York City, proctors for respondent Marte Cia. Nav. S. A.

GODDARD, District Judge.

This is a motion by respondent, Marte Cia. Nav. S. A., to stay this suit pending arbitration pursuant to the agreement between the parties in their salvage agreement.

The S. S. Georgiana, owned by respondent Marte Cia. Nav. S. A., sailed from San Juan Harbor on a voyage to Liverpool with a cargo of scrap iron, and stranded on the rocks outside the harbor on May 12, 1953. Her master signed a Lloyd's standard form of salvage agreement [no cure, no pay] with libelant's representative. The agreement included a provision that any issues arising out of the contract were to be solely referable to arbitration by the Committee of Lloyd's, London, England.

Subsequently, she was towed into San Juan Harbor by libelant and tendered by the salvor, on June 12, 1953, to the master, who rejected the tender and refused to accept redelivery of the vessel on the ground that it was not in an acceptable or safe condition and that the salvor had not performed according to the agreement.

Libelant then requested security in the amount of $198,000, plus an additional $5,000 a week on a quantum meruit basis for care of the vessel and cargo for the period while seeking to obtain from the owners of the vessel and cargo a disposition of them, to be posted by respondent with the Committee of Lloyd's. Libelant instructed its London representative, Thomas Cooper & Co., to so notify Lloyd's. Respondent objected that the security was excessive and not yet earned, and cabled its representative in London, Ince & Co., on July 8th, to represent respondent before the Committee of Lloyd's and to oppose the security in the requested amount. On July 10th, Lloyd's wrote to Ince, confirming a telephone conversation with them, and informing them of the request for security. By letter of the same date, Ince replied to Lloyd's and said they would communicate further when they had the necessary instructions. July 20th, respondent's New York attorneys notified libelant that the security as demanded would not be posted with Lloyd's. On July 24, 1953, this suit was filed. In the meantime, it would appear that the matter was held in abeyance by Lloyd's, as far as the court can determine. On September 15, 1953 the libelant executed its lien, sold the vessel, and the $42,500 proceeds were paid into the registry of the court in Puerto Rico where libelant had also filed suit. On September 22, 1953, Ince wrote to Lloyd's that rather than post security, their clients preferred to allow the salvors to exercise their lien in accord with Clause 5 of the agreement, and they requested arbitration.

On August 18, 1953, respondent filed a similar motion to this present motion. On September 24, 1953, Judge Edelstein denied the stay without prejudice to a renewal with the presentation of evidence on the question of any default by respondent. This present motion is that renewal.

The salvage agreement, which both parties signed, provides in Clause I that the amount of remuneration for the salvage services shall be fixed by agreement or arbitration, where, as here, no amount was fixed in the agreement, *"and any other difference arising out of this Agreement or the operations thereunder shall be referred to Arbitration in the same way."* [Emphasis added.]

■ Title 9 U.S.C.A. § 3, Stay of proceedings where issue therein referable to arbitration, provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitra-

tion under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

This suit seeks to recover for libelant's salvage services under the agreement, charging breach of the agreement. Respondent urges failure of performance and disputes the value of the services. These issues are such as Clause I of the agreement contemplated should be arbitrated. They should be referred to arbitration provided that the respondent is not in default of such arbitration.

Libelant argues that respondent is in default, in not posting the security, in not appointing a representative before the Committee, and in breaching the salvage agreement.

The agreement provides in part:

"4. The Contractor shall immediately after the termination of the services or sooner notify the Committee of Lloyd's of the amount for which he requires security to be given; and failing any such notification by him not later than 48 hours * * * after the termination of the services he shall be deemed to require security to be given for the sum named in Clause I, or, if no sum be named in Clause I, then for such sum as the Committee of Lloyd's in their discretion shall consider sufficient. * * *"

"5. Pending the completion of the security as aforesaid, the Contractor shall have a maritime lien on the property salved for his remuneration. The salved property shall not without the consent in writing of the Contractor be removed from ———— or the place of safety to which the property is taken by the Contractor on the completion of the salvage services until security has been given to the Committee of Lloyd's as aforesaid. The Contractor agrees not to arrest or

detain the property salved unless the security be not given within 14 days * * * of the termination of the services * * *. In the event of security not being provided as aforesaid or in the event of any attempt being made to remove the property salved contrary to this agreement the Contractor may take steps to enforce his aforesaid lien. The Arbitrator or Arbitrators or Umpire [including the Committee of Lloyd's if they act in either capacity] appointed under Clauses 7 or 8 hereof shall have power in their absolute discretion to include in the amount awarded to the Contractor the whole or such part of the expenses incurred by the Contractor in enforcing his lien as they shall think fit."

"6. After the expiry of 42 days from the date of the completion of the security the Committee of Lloyd's shall call upon the party or parties concerned to pay the amount thereof and in the event of nonpayment shall realize or enforce the security and pay over the amount thereof to the Contractor unless they shall meanwhile have received written notice of objection and a claim for Arbitration from any of the parties entitled and authorized to make such objection and claim or unless they shall themselves think fit to object and demand Arbitration. * * *".

"7. In case of objection being made and Arbitration demanded the remuneration for the services shall be fixed by the Committee of Lloyd's as Arbitrators or at their option by an Arbitrator to be appointed by them * * *."

■ Clause 5 seems to indicate that security of the salvor may be effectuated alternatively by execution of the lien. Clause 5 further then provides that subsequently the Arbitrators to be appointed may protect the salvor by awarding him the expense incurred by him in executing his lien. It thus contemplates

that arbitration may proceed, though the bond requested is not posted. Thus, I do not think that the agreement contemplated that the owner would be in default of arbitration where he did not post the bond. Further, it would be inequitable to so hold in this case for the respondent has consistently urged that the libelant had not fully performed its services under the no cure, no pay contract and thus the requirement of posting the security was premature. This very issue is one which the agreement appears to require to be arbitrated under Clause I.

Neither can I find that respondent failed to appoint a representative to appear before the Committee. The cable of July 8th, appointed Ince & Co., and while no confirming reply appears, it does appear that subsequently Lloyd's and Ince exchanged correspondence on the matter.

Libelant seems to have acted with exceeding haste in filing its suit while the situation with Lloyd's was yet unclear. Its cable to London to inquire if Ince had been appointed by respondent, dated August 13, 1953, was subsequent to the filing of suit. It nowhere appears that there was an express request by libelant to appoint an arbitrator. If the notification to Lloyd's of the request for security be regarded as such a request, and I do not think the terms of the agreement contemplate that it is, even so I cannot disregard the fact that it appears that Ince and Co. did act for respondent.

Though libelant maintains that there was a delay from July 10th until September 22nd, when the request for arbitration was made by Ince, I do not think that is an unreasonable delay so as to premise a finding of default, in view of the fact that libelant's apparent rejection of arbitration, by filing suit, is an intervening factor.

As to the alleged breach of the agreement, I do not think that a default can be predicated on this, for these are the questions to be arbitrated.

I do not find that the respondent is in default and as I think that these questions in dispute should be, and were intended by the agreement to be, arbitrated, this suit is stayed pending the outcome of that arbitration.

Settle order on notice.